Based under 24-591, Saad Khalid de Valens v. Pamela Bondi, Attorney General of the United States, U.S. Department of Justice, in her official capacity only, et al. Mr. de Valens, you still hold non-critical beliefs. Good morning, Your Honor. May it please the Court. The District Court erred when it conflated the watch list orders with the no-file list orders, concluding mistakenly that one was inescapably intertwined with the other. But that's not the case, Your Honor. These watch lists, although they are one part of a single database, they're separately applied standards. There's a secret, undisclosed standard that the government has never acknowledged what it is regarding the selectee list. There's what the government calls a reasonable suspicion standard that governs the inclusion of the terrorism screening database. And there's another standard that governs the inclusion on the no-fly list. All three of those standards are applied in the first instance, not by the TSA administrator, but they're applied in the first instance by the Terrorism Screening Center. And you can be on one and not the other. And for that reason, the Court made an error in conflating all three. But beyond that, the watch list consequences show that the ramifications of being on these secret lists goes far beyond the airport. It goes far beyond commercial air travel. It includes things like how you're treated at the border. For example, if you're on the watch list and you show up at the border, whether it's by plane, by car, your electronic devices are subject automatically to search. They assume, because of your status, that they can take your device, look through it as they please. That's not the approach that they take to other travelers that are not on the list. That's a consequence that doesn't involve the Transportation Security Administration at all in any kind of way. It's the Terrorism Screening Center on one hand making the listing decision. It's the Terrorism Screening Center making the list available to border patrol agents who then use that list to decide how to treat people at the border. So that's an example of a watch list consequence that is created by the Terrorism Screening Center putting somebody on the watch list, sending that to CBP. But they send it everywhere else in the federal government too, and that creates all sorts of consequences. Another specific consequence arising from the watch list dissemination to the USCIS is the processing of the Sodman College wife's immigration papers. Can you point to any cases which essentially a person is placed on the no-fly list and that's not been rescinded, and then yet you get to go have your entire case litigated in the court? Your Honor, these cases are being litigated in district court all the time. There's a District of Maryland case. They're starting, correct? Well, Your Honor, this 46-110 argument, if that's what you're getting to, is failing all across the country in district courts everywhere. And I think, Your Honor, the cases are being heard in the district courts. Having been remanded from the circuit court? Yes, they're being heard in district court because the district courts, for the most part, accepting the current… I'm just trying to have the distinction. Are they initiated in district court? They're initiated in district court. The government… And then there's not a final order at that time that then brings it up to circuit court. No, Your Honor, there's plenty of cases where there are TSA administrator orders, and the cases are still being heard in the district court. The District of Maryland currently is hearing a case where there's a TSA administrator order. And if they're still being heard, then that means that TSA has not appealed it in using the 46-110 exclusive jurisdiction. Well, that case is still ongoing, so I'm sure they'll appeal it at the end. But that's not the only time a district court has rejected the 46-110 request. Tell me the reverse, then, for circuit courts. Are you aware of cases that are in circuit court, and then they get remanded to do what you're requesting? Yes, Your Honor. The Fourth Circuit, just in August, in September, just very recently, in Long, Sadiq Long v.… Sadiq Long v. somebody, I'm sorry, I don't… The Fourth Circuit had a case in which there was a final order that came to the Fourth Circuit then, and then the Fourth Circuit remanded in the way that you're asking us to do? Well, the Fourth Circuit did not conclude that 46-110 gave it jurisdiction. And so neither the Fourth Circuit didn't reach that conclusion, and the district court also didn't reach that conclusion. So that's one example. The Ninth Circuit in Jonas Fickrey v. FBI, they also parsed through the application of 46-110 and concluded they made a distinction. Are you challenging the redress procedures, or are you challenging the initial placement? And Jonas Fickrey v. FBI made a distinction between the two and said the case before it was a challenge not to the TSA particulars, but to the underlying placement. The Fourth Circuit, Your Honor, in that Sadiq Long case, they remanded with instructions to investigate whether the complaint in the first instance regarded the TSA administrator's decision. But in that case, the Fourth Circuit was very clear that the broad scope of the claims had nothing to do with the TSA administrator's decision. And so that's an example, Your Honor, of the court understanding that there are some TSA administrator issues mixed in and allowing the district court to parse through them. That's not the approach, Your Honor, that the district court took in this case. The district court said instead that everything is too close to the no-fly list, and because of that, all of it is precluded by 46-110. That just proves too much, Your Honor. The no-fly list has nothing to do with what CBP does with Sodman College watchlist status at the border. It has nothing to do with what USCIS does with Sodman College watchlist status in processing his wife's immigration papers. It will have nothing to do when the Department of State considers his passport or his children's passport in the future. That has nothing to do with the TSA administrator at all, either before or after. And with that, Your Honor, if there's no further questions, I'll also balance my time. All right. Mr. Waldman. What's your understanding of the long decision from the Fourth Circuit? The long decision, like the thicker decision in the Ninth Circuit, dealt with a unique circumstance where the plaintiff was removed from the no-fly list, and therefore there would be no conflict between a simultaneous adjudication by the district court of watchlist or initial no-fly list status and the TSA's final order. So it's completely distinguishable, and I believe the district court addressed that circumstance in its opinion. So the essence of what the district court was saying here is that if it were to review the watchlist decision, and let me just step back and explain the relationship between the two. A person cannot be on the no-fly list without first meeting the lesser standard for being on the watchlist, and then they must meet a higher standard on top of that to be on the no-fly list. As a consequence of that relationship, you cannot remove a person from the watchlist without also removing them from the no-fly list. And the district court reasoned, therefore, any relief that I might give you would necessarily affect the D.C. Circuits, or whatever court of appeals was handling the case, would necessarily affect their jurisdiction over that TSA final order that is exclusive in that court. That's just a strange effect, yes. But aren't there all kinds of situations in which proceeding in another court or another forum would affect a case pending elsewhere? And we don't see that as like a jurisdictional conflict so much as just the interplay of different legal determinations. Like if I were, you know, saying I was excluded from some program for medical doctors, and in a separate proceeding in another forum, I were, you know, my medical license were removed, and that would move the case, my case, that I was unlawfully excluded from some opportunity for medical doctor, but it wouldn't interfere with the jurisdiction of the court that was deciding my challenge to my exclusion. It just changes the underlying facts. And it seems like that happens all the time. And why is this not just the relationship between a district court challenge to placement on the watchlist and a challenge to an order, a TSA administrator order in the court of appeals? Why is that not a similar relationship? Well, I think because I don't know all the nuances of the situation you described, because I'm not familiar with the medical licenses regime, but I would imagine that a decision in one doesn't have any necessary consequences for another. But you are correct that we do see – in the case that is, you know, here like the 46-110. Right, but it might also be that there is not necessarily an exclusive jurisdiction regime for hearing one claim versus another. But there are instances where, in fact, courts do decline to entertain claims because of this particular conflict, and these are useful for analogy. Heck versus Humphreys is one that comes to mind, which is if your 1983 challenge for malicious prosecution is necessarily going to affect the validity of the underlying conviction. Well, but that's a substantive requirement. It's not about one court's jurisdiction running into the other. It's that you – well, you're undoing something, but this doesn't seem like that. Well, it is by analogy. And other analogies are like younger abstention, where there would be a state court proceeding, and there it's more of an act of equitable discretion than of jurisdiction. But sometimes these things come up in jurisdictional ways, like in track, where somebody tries to go to district court in the face of an exclusive jurisdiction regime and claim, well, we're not really in the exclusive jurisdiction of the court of appeals because we don't actually have that final order. We've stopped and we've gone at an earlier stage. The courts say, by implication, your claim belongs in the court of appeals, because otherwise it would affect the exclusive jurisdiction of that court to order the kinds of relief that Congress has channeled to that court and not to the district court. But our jurisdiction was exclusive in track over something that we had jurisdiction over, whereas you're saying the court of appeals jurisdiction is exclusive of something over which we don't have. Well, it depends on which claim we're talking about. I think it's – The watch list claim. Okay. I was talking about the claim for initial placement on the no-fly list, which is sort of one of the claims that I brought up. And that falls in the heart of track, which is if you start down the road of agency proceedings that are going to culminate in an order the district court has exclusive jurisdiction of over, and you stop in the middle and then try to go to district court, that falls in the heart of track, which is even though you don't have the agency – final agency order yet, you would at the end of the process, and you can't stop in the middle and go to district court. Now, when it comes to the watch list – If we have lower court cases or agency decisions that could undercut our jurisdiction, then sometimes can't we just issue stays to protect future jurisdiction? I think you could, but sometimes it depends on whether or not you view the problem as a statutory jurisdiction problem or as an Article III problem. Because if it's an Article III problem, I don't think you would stay. You would just say once there's no jurisdiction, you're done. And what my reading of what the district court did here is it said, to the extent that you're purporting to challenge TSE's initial no-fly list decision, that is essentially like a track-type decision where you really need to bring that in the Court of Appeals. But with respect to the watch list decision, that that is a redressability problem because there's no relief the court can grant that wouldn't effectively undermine this court's potential jurisdiction. When you say the court, are you talking about the district? The district, exactly. And one of the problems that it pointed to was the potential for conflicts of judgment. And although it didn't say this explicitly, it's important to realize that although here we're talking about the district court here in D.C. and the D.C. Circuit, because of different venue rules that apply for a district court case under 1331 versus the venue rules that apply for a TSA order under 46110, you could potentially have a case in California district court on the watch list and in D.C. on the TSA final order. And then you never even have any way of reconciling them because they're not even in the same jurisdiction. I guess I'm still not entirely understanding why if I were erroneously on the terror watch list and it was affecting my ability to fly, if I chose, if I never chose to use the administrative process, you don't dispute that I could bring a district court case to both. I think you can see that in your case. Well, I think you might avoid some of the threshold jurisdictional problems, but you would run headlong into terrible problems on the merits because if you're bringing a due process claim that says I don't get notice and an opportunity to respond, and the easy answer is, but there's a redress process available to get that, and you didn't avail yourself of it, you're just going to fail on the merits. So maybe you avoid these problems, but you just raise other ones. Your position is that the redress process in a suit against the TSA, a plaintiff can get redress for a baseless, erroneous placement initially on the watch list and on the no-fly list. I'm sorry, can you repeat that? On the watch list and the no-fly list. Through a challenge, 46-110 channel to court of appeals can challenge both of those things before us. I think so. Inextricably intertwined. Yeah, I think you're essentially asking what is a plaintiff supposed to do in this situation if they want to challenge both simultaneously? We think that the answer is, in the unusual circumstances of this case, where you are on both lists currently and you want to challenge them both simultaneously, that the TSA final order, I think, at the first case, definitely belongs here. And in that posture, all the other challenges are inextricably intertwined and could be brought in this court under 46-110. The other thing that you could do, if you wanted to, is just challenge the no-fly list order, TSA final order, in this court. And if you prevailed, then you could bring your other claim in district court, if that's how you wanted to proceed. You do it the other way around? You want to bring a claim to the watch list only? Yeah. You can't do that in district court and say there's no due process, with respect to my placement on the watch list. Well, at that point, the only way you know you're on the watch list and get notices is if you go through the redress process. Well, that's lucky for you. If I did know, if I intuited, my name is Ted Kennedy, and I know there's an IRA person whose name is Ted Kennedy, and I want to challenge that. So I'm just going to take a chance and say, I believe I'm on this list. You don't dispute that you could go into district court on that? I wouldn't say that, Your Honor. But I think, first of all, it's a different case than what we have now. And I don't necessarily think in this case you need to map out all the different permutations and how you would do it. Every hypothetical is a different case. I'm trying to understand the basic proposition. No, I understand. I think that part of it would be a question. I think the most relevant way to think about it is, would this fall under the artful pleading rule? Are they really trying to get at the no-fly list decision by attacking the watch list? Is that really the heart of the case? And here I think it is. It started as a no-fly list. It started with him in another country unable to fly back, and he went through the whole redress process. The complaint is up and down about the no-fly list, and that's really what this is about. In your hypothetical, I think you'd have a question of, is that really what that kind of case is about or not? It would depend on the facts and the circumstances, and I'm hesitant to give a one-size-fits-all answer for that. But one thing that I do want to point out is, everything that we focused on in our brief and so far today has sort of focused on the question of, was the district court correct to deal with it in the jurisdictional way that it did? But another way to look at this is sort of, now this case is before this court, and we just have this other case, and you're going to go to conference after this, and you're going to decide that case. And if you were to agree with the government and affirm the TSA's final order and maintain him on the no-fly list, I think at that point, whatever the district court did, it follows from that, that there's no relief that they could be granted on the other claims that wouldn't necessarily undermine the judgment that you had just rendered, keeping him on the no-fly list. But you also indicated that we could look at the entire record, the antecedent, legal determination, to do that. And you also indicated earlier that in doing so, if there was something that we found problematic, even though TSC is not at the table, whatever order we issued that affects TSC's action, it still is against TSA, but in effect deals with TSC. Yes, because any order, anything that the TSA does on its own, if it had removed the person from the no-fly list during the redress process, that would be carried over to TSC. And you don't consider TSC not having due process to be at the table for this to be sufficient? I'm just thinking about the EGE, I think, case. Yeah. So, yes, that was a case that existed before the current procedures where TSA was not  But after 2015, TSA issues the final order. And in fact, FUSIC deals with this situation and says EG is no longer operative in this context once TSA is issuing the final order. And so what I'm saying is here, if you were to affirm TSA's final order and he's going to remain on the no-fly list at the end of case number one here, at that point, all the harms that he alleges at the border, unable to fly, all of those things that he says are going to come just as much from his status on the no-fly list, which you would have just affirmed as it does from the watch list or the TSC initial decision. Why? The no-fly list doesn't deal with land borders. It doesn't deal with visa claims. Well, his complaint says, my visa is being delayed because I'm on both of these watch lists. And he would remain on the no-fly list. And number two, at the border, the policy about searching the cell phone searches that he's referring to says, if you're on a watch list, which no-fly list is a watch list. And I don't think anyone is disputing that. If you remained on that, you would be subject to the cell phone policy the same as if you were on just the other watch list. I'm having trouble following. And you've said this, I think, a few times and just quite clearly in response to Judge Child's question, how can we review the challenge to the process by which the plaintiff got on the terror watch list when our special statutory jurisdiction under 46-110 extends only to the TSA administration? Well, the district court addressed this question, Your Honor. And I think the answer is like you couldn't because there's no standing, which is to say there's one process if you're a citizen who's on the no-fly list. If you're not on the no-fly list and you're only on the watch list, you get a different procedure. And what the district court said is, but you didn't get those other procedures because you are on the watch list. So you got a different set of standards. So any challenge to the procedures you would get if you were exclusively on the watch list and not on the no-fly list is an academic question because that's not the procedure you got. You can't challenge the procedure. You can't challenge before us the procedure by which you were originally put on the underlying terror watch list in a challenge to a TSA order. I would put it this way. In a situation where you did not get that type of procedure, you cannot challenge the adequacy of a procedure that wasn't applicable to you. That's what we're saying. And so if you want to just challenge the procedures you would get for someone who is solely on the watch list and not on the no-fly list, you could do it if you challenge your no-fly list status, get removed from that, and then say, I'm still on the watch list and I want to challenge that. You could, in theory, do that. I mean, part of the problem here is that she's trying to challenge everything at once when they're all intertwined. This has really never happened in a watch list case as far as I'm aware, and I've been litigating this for, you know, 20 years. So it's a little bit sort of unusual for the posture, but the fact of the matter is if you are only on the watch list and not on the no-fly list, you're not going to get notice of your status. You're not going to get an unclassified summary. And if he wants to challenge is that procedure adequate, I think the district court's answer is you can't do that because that's not the procedure that was applied to you. If that procedure is ever applied to you, you can then challenge it, but that's not what happened here. It's sort of an academic question. And it's one that, by the way, no court has addressed it as a due process matter because five circuits have held when you're only on the terrorist watch list and not on the no-fly list, you don't have a due process liberty interest at that stage. So no court has ever reached that question. And so I think you'd have some merits problems as well, aside from the jurisdictional ones that you encounter in this particular posture. All right. Thank you, Your Honor. Your Honor, I'd just like to begin with a bit of a hypothetical. Let's say for example, the inclusion standard for the no-fly list was whether or not you had red socks. The risk of erroneous deprivation in applying that standard would be very low. It's easy to tell if somebody has red socks or not red socks. And if you got to DHS TRIP, the standard that DHS TRIP would have would be that they would be applying would be whether the person has or does not have red socks. We challenge, what we're challenging is not how TSA administered the standard that it inherited. We're challenging the actual inclusion standard, the one that the FBI, the Terrorism Screening Center initially used against Sobden College to put them on the no-fly list and to put them on the watch list. And that's why you can locate the challenge itself, the target of the challenge, where we're aiming it at something that the Terrorism Screening Center has and does and applies and not something that the TSA administrator does itself. But when you get to the merits, you can see that the interaction between some of these claims in 46110 is yet another reason to send the case back. For example, the substantive due process claim. For the substantive due process, those rights, they can only be violated via the least restrictive means, no matter the process. The substantive due process is actually opposed to the process itself. But 46110 says that if there's substantial evidence of a fact, it's conclusive. This court is to treat it as conclusive. That's the exact opposite of what you're supposed to do for a substantive due process right. So for example, in this case, the allegations of the complaint are that the no-fly list is useless, that it does not enhance aviation security and that if anything, it's certainly not the least restrictive means. And the best evidence that it's not the least restrictive means is this practice that the government has of allowing people on the no-fly list to fly up in certain occasions. What are the advantages in these kinds of cases where the record is basically what the TSC considered in making its decisions? It's like an administrative record. What is the advantage to you of being in the district court? What would you be trying to discover? It is not the administrative record. These cases are not in district court. These cases are not being litigated almost to a case based on the administrative record. There was a case in the Eastern District of Virginia, Mohammed V. Holder. It's probably seven, eight motions to compel, maybe two and a half years or three years of discovery in the District of Maryland. Many, many motions to compel, depositions, thousands of documents. All kinds of information, flavor of what it is that you need to get and why on claims that you need to bring. For example, there was a leaked copy of the watch list from 2019. We've assessed that list. We think that that list, this is an actual leaked copy of the watch leaked. What happened was a regional air carrier accidentally put the watch list and the no-fly list on the public internet. Somebody found it, shared it with folks that work on these issues. And we counted, for example, just the Mohammeds, Ahmeds, Mahmoods. It's like a third of all of 1.8 million entries. We estimate just looking at a leaked copy of the list, there's more than 99, but the no-fly list, it's more than 99% Muslim. In discovery, we could show that. And a watch list, a no-fly list built on these kind of vulgar stereotypes, which is exactly what the allegations of the complaint are, would show that. It's also an efficacy thing. For example, the depositions in the district of Maryland watch list case showed that the no-fly list is not aimed at some particular security concern. It's a security concern that can be addressed by other things. It's a security concern that is addressed by other things. It's never the case that the no-fly list is relied on to do anything exclusively. And so this is a procedural due process. This is Matthews v. Eldridge. Procedural due process is a fact-intensive inquiry, and it's especially fact-intensive here, where we have specific evidence that the things, the facts, the supposed facts that the government relied on here were false facts, false facts that they should have known were false. If there are no other questions, Your Honor. Yes. A lot of the information will be classified, so you're just not going to know. So how do you reckon with that? Well, Your Honor, you'd be surprised by how much information that plaintiff's lawyers have been able to get in all of these cases. It's even the Northern District of California did a trial. They did a trial and they found out the reason why the person was placed on the no-fly list. It was because the FBI agent accidentally checked the wrong box. And so it is absolutely possible in the district court to get the underlying reasons, to get summaries of the underlying reasons, stipulations. We've got stipulations in the District of Maryland that help us work through these kinds of searching of electronic device claims. And so Your Honor, this case does belong in district court. It's fact intensive. And if there are no further questions, I'll stop.
judges: Henderson; Pillard; Childs